Judge Buckner
delivered the opinion of the Court.
On the 15th of August, 1818, James Anderson sold to George Boucher, a tract of land, for the sum of $2940, and executed a bond for the conveyance of it.
Boucher executed two notes for the purchase money, each for $11-70. The first was payable in one, and the second, in two years, after date.
Upon one of these notes, Anderson sued and recovered judgment, which was replevied by Boucher, with Waters and Winslow, his sureties.
Bradford sold a tract of land, containing one hundred and twenty two acres, to Anderson, at the price of about $2423, and the contract was reduced to writing, in the form of articles of agreement. In part payment of this sum, Anderson assigned the note which had not been put in suit, to Bradford.
On the 19th of May, 1820, Boucher executed to Martin Marshall, a deed of trust, for a tract of land and a female slave, to secure Bradford, in the payment of §l'.'3'j, In one year thereafter, that being tne amount calculated to be due, on said note, and the interest *70 , thereon, to the time mentioned in the deed of trust, fqr its payment.
On the 6th of June, 1822, Anderson assigned to Bradford' the replevy bond aforesaid, in discharge of the remaining portion of the price of the land, and Bradford then conveyed to him the land, and executed to him a note, binding himself to pay Anderson $100, when he should collect the amount of the replevy bond.
To subject the property in the deed of trust to sale, in payment of the amount, for which it was executed, and to subject the land which Anderson had sold to Boucher, to sale, in discharge of the replevy bond, Bradford filed the original bill, in this case. He charges, that the sureties in that bond, were insolvent, and insists,- that by virtue of the assignment to him, he had-an equitable lien on the land aforesaid, for the amount embraced by the replevy bond, and for as much of the debt secured by the deed of trust, as might not be raised by the sale of property, therein mentioned. James Anderson, Boucher and others, were made-defendants.
In his answer, Boucher acknowledges, that the deed of trust had been executed to secure the payment of the above described note. He makes his answer a cross-bill, and charges that Anderson had not a valid title to the land, which he had sold to him; that a part of it had been recovered from him by L. Craig, upon the demise of Thomas; and that there was an equitable out-standing title to the same, in the heirs of May, P. Thomas and others, and that those under whom Anderson claimed, had not regularly conveyed to him. He also, filed an original bill against Anderson and others who claimed title to the land, alleging the same facts, stating that the replevy bond had been executed upon the same consideration; had been assigned to Bradford;. and prays for a rescisión of this contract with Anderson; and that the deed of trust, assigned note and replevy bond may be cancleled. An injunction was granted him, against the replevy bond.
In the mean time, Anderson filed his bill against Craig and Thomas and heirs of May, &c. who set up claim to the land, which he had sold to Boucher, and also, against his vendors, for the purpose of having the deeds regularly recorded, and of quieting and perfecting his title.
*71 These causes were tried, at the same time, and upon a final hearing, the circuit court perfected the title of Anderson, to the land sold by him to Boucher, and decreed, that Anderson should convey to him, upon payment of the purchase money, and dismissed Boucher’s bill and cross bill, which he had instituted to vacate the contract with Andeison, and to cancel the note, replevy bond and deed of trust. The court also, subjected the land embraced in the deed of trust to sale, and confirmed the sale thereof, made by the commissioner appointed for that purpose.
The land was sold on the 22d of September, 1826, on a credit of two years, for f1587 4 cents, which amount deducting therefrom, the costs of the suit against Boucher and Marshall, was placed to the credit of Boucher, on the debt secured by the deed of trust.
The land purchased by Boucher of Anderson was, by decree, subjected to sale, in payment of the replevy bond, upon the ground, that Bradford as assignee, had the same lien on the land, that Anderson previously had. It was accordingly sold, on the 22d of September, 1826, for $'1031 25 cents, for which Boucher was allowed a credit, on the replevy bond. In the above decree,'all the parties concerned, acquiesced.
Bradford had thus received parts of each of those demands; but there remained unpaid, a portion of the money, to secure which, the deed of trust was executed; and of that embraced by the replevy bond.
To coerce payment of those, he filed a supplemental bill, and the decree rendered thereon, presents the only subject of contest, in this appeal.
In this supplemental bill, Bradford charges, that he sold and conveyed the tract of land in his original bill mentioned, to Anderson, and received in payment therefor, the above mentioned assigned note and replevy bond, and that Boucher and his surety in the replevin bond are insolvent, as are also his sureties in the injunction bond executed in the suit prosecuted, to rescind the contract between Boucher and Anderson. He further alleges, that Boucher and James Anderson, had left the state of Kentucky, the latter carrying with him all his property, and thereby rendering him unable to coerce from him, payment of the demands, which he *72 had against him. as assignor of the note and replevy bond aforesaid, unless be can procure a decree, subjecting to sale in satisfaction thereof, the land sold by him, Bradford, to Anderson.
tie insists, that he has a lien upon it, for that purpose, and prays, that by decree, it may be enforced. He charges, that. James Anderson conveyed the same to Ward, who conveyed it to Henry Anderson, son of said James, each of whom had knowledge, before he received a deed for the land, that he, Bradford, had not received from his vendee, the whole of the purchase money, and each of whom had received a deed for it, founded upon no valuable consideration, with the intent ion of defrauding James Anderson’s creditors. J ames Anderson, Henry Anderson and Ward are made defendants.
Ward and Henry Anderson deny notice, and all fraudulent intentions.
Against James Anderson, the bill was taken as confessed, upon publication against him as a non-resident. At the March term, 1829, a decree was entered in favor of Bradford against James Anderson, for the sum of $975 22 cents, as a balance due on the replevy bond, after deducting the credit of §1031 25 cents, and the sum of ^TOO, and interest thereon, for which said J. Anderson held Bradford’s obligation, payable upon the collection of the replevy bond.
The deed from James/-nderson to Ward, and that from the latter to Henry Anderson, was declared to be fraudulent, and were consequently vacated. The land embraced by them, (which was the same, that was sold and conveyed by Bradford to James Anderson,) was subjected to sale, in satisfaction of said sum of §975 22 cents, and costs. To reverse the decree, Ward and II. Anderson prosecute this appeal.
The decree is confined to the demand set up by the appellee, on account of the assignment of the replevy bond, and his inability to collect the amount from the obligors. But the decree ought not to be reversed, if it can be sustained upon that ground, or on any responsibility of the assignor of the note, to secure the payment of which, the deed of trust was executed to M. Marshall. We shall, therefore, notice each of them.
A creditor, whose claim is purely legal, must have judgment and exeeution before he can maintain a bill to set aside a fraudulent deed. If debtor has removed from the state, so that judgment cannot be obtained against him, creditor may( upon showing a well founded demand, maintain a bill to set aside a fraudulent deed madeby debtor.
Replevying a debt is conclusive evidence of the solvency of the debtor at ■thedate of the replevy-bond.
Had James Anderson been subject to the jurisdiction of the courts of this state, the appellee, if we consider his demands to be of a merely legal character, cannot be viewed as a creditor, authorized to question the validity of the deeds to the appellants, until he had obtained a judgment, and issued execution thereon, against James Anderson; see the cases of McKinley, &c. vs. Combs, &c. I Mon. 106, and Allen and Ward vs. Crump and Gray, Ibid, 232. But, as he, Anderson, was not a resident of this state when the bill was filed, to procure the decree sought to be reversed, and continued to reside beyond the limits of the state, the appellee could not place himself in the attitude of a judgment creditor. It therefore, becomes necessary to inqujre whether either of his claims is of such a character, as would have enabled him to recover a judgment against his assignor in a court of Common law, had process been served upon him. We are ' of opinion •that neither of them is of that description.
When Voucher injoined the collection of the replevy bond, he executed an injunction bond, payable to Anderson and Bradford, with surety approved by the court. That was strong testimony of his solvency at that time.
In the case of McGinnis vs. Burton, III Bibb, 6, this court said, that replevying a debt is conclusive evidence of the solvency of the debtor, at the date of the replevy bond. Does the execution of an injuncbond furnish less testimony of the obligor’s solvency, at its date? Why should not a debt be considered as fully secured by the one or the other? When a judgment is replevied, it may be considered as merged in the replevy bond, which is declared by law, to have the force of a judgment; and had the release from further responsibility on the part of the assignor, in the case cited from Bibb, been placed on that ground, it could not be considered as furnishing by analogy, an authority applicable to this point. That, however, is not assumed, as the basis of the reasoning in that case. The obligor's in the injunction and replevy bond, were prosecuted to insolvency; but if the sureties in the former bond were good at the time it was executed, can Anderson be held responsible on account of their subsequent insolvency.
If during the peridenoy of an injunction, the solvency of the surety in the injunction bond be doubtful, the defendant may move the court to dissolve the injunction, unless additional and satisfactory surety be given.
Assignor of a judgment is hot bound to refund to his assignee the consideration received for the assignment, upon theinsolvency of the obligors, unless, by express contract, he has bound himself to do so.
Statute of assignments does not render replcvybonds assignable.
The injunction was depending for several years/ The injunction bond bears date in August, 1822, and the first execution issued on the replevy bond, bears date in October, 1825. If, during the pendency of the injunction, the solvency of the surety taken on granting it, had been doubted by Bradford, it was his duty, to move the court for a dissolution of it, unless additional and satisfactory security had been furnished.
But without intending to decide that the execution of an injunction bond would, of itself, release the assignor from responsibility, there is another view growing out of this part of the subject, which is presented by the record.
Thomas Winslow, who was one of the sureties in the replevy bond, was the only surety in the injunction bond. In the case of Lynch against Bullet, &c. liar. 314, it was decided, that a surety in a replevy bond, ought not to be received as the surety in a supersedeas bond, given on serving out writ of error, to reverse a decree in chancery, which dissolved an injunction, staying proceedings at law, upon the replevy bond.
It cannot, therefore, be proper to hold Anderson responsible as assignor, after Bradford permitted the injunction without objection or attempt to rectify the error, remain for years, upon a bond with an insufficient and improper suiety.
But it has been decided, that the assignor of a judgment is not bound to refund to his assignee, the consideration received for the assignment, upon the insolvency of the obligors, unless by express contract, he bound lnms.clf to do so; see Robinson’s administrator vs. White, IV Lilt. 237. It is not pretended, that anjr such agreement was made in the present case; nor that fraud was practiced by Anderson, by holding out false inducements to the appellee, to accept the assignment. It has been said, that a replevy bond is not a judgment, and that the statute makes all bonds, bills and promissory notes, whether for money or property, assignable.
These expressions are-indeed very comprehensive-But it has not been determined in any case, that we recollect that they should be construed as embracing *75 replevy bonds. Such bonds when taken by the officer, are to be returned to the clerk’s office, to be there safely preserved, and are declared to have the force of judgments, upon which executions may issue.
The liability of assignors should not be extended beyond the point to which it has already been carried.
They are styled bonds, but if valid as replevin bonds, they have the force of, and are in truth, judgments. We do not, therefore, perceive any satisfactory reasons, why, so far, as it relates to the supposed liability of the assignors of such bonds, they ought to be distinguished from other judgments. They do not seem to have been contemplated by the legislature, as the subjects of transfer, by assignment, for they are withdrawn from the theatre of commerce, and by the express directions of the statute, are to be safély preserved by the clerk. In the case of Jones vs. Powell, V Litt. 289, it was decided, that although such a bond may be assigned, the execution thereon must issue in the name of the obligee. The reason is, that the execution must pursue the judgment.
There is.no ground, upon which to suppose, that Anderson assigned the replevin bond in this case,, as a common law bond, and. that he is, therefore liable. It was assigned by him, and accepted by Bradford as a bond, having the force of a judgment.
An- execution issued upon it, was returned by the officer, “no property found;” and it remains to this day in full force, upon which, other executions may issue. Each party considered and treated it as a judgment; Anderson cannot then be bound, as the assignor of a common law bond.
It may be said, that upon the principles of justices, there ought to be no diilbrence between the liability of the assignor, of a replevin and any other bond; but the same remark may be applied to the case of assignment of an ordinary judgment.
The uniform tenor of the decisions of this court is, that no principle should be adopted, extending the liability of' assignors beyond the- point, to which it has been already carried. We know of no case, in which the assignor of a replevin bond, has been held responsible, on account of the insolvency of the obligors therein and we are not disposed to introduce any doctrine peaking him so.
Deed made without consideration and with a fraudulent intent,is binding between the-parties.
, The demand against Anderson, as assignor of the: note was, it seems from the decree, considered by the circuit court as untenable.
It certainly is so. The deed of trust was an important change of the contract, which released the assignor from responsibility, upon that assignment. Besides the indulgence which had been previously extended to the obligor of the note, another year’s credit was allowed, long after it became due, and a new security was furnished by the deed of trust. The note was then, we presume, delivered to the obligor as discharged.
The decree therefore, cannot be sustained.
It is true, that James Anderson has not appealed from it; but although the deed from him toWard, and from the latter to H. Anderson, may be without consideration, and made with the intention of defrauding creditors, it cannot be proper to disturb them, at the instance of one who was nota creditor; because, if not a creditor, it was not a fraud against his rights.
That such was not the fact, is manifest, if the view, which we have taken of the nature of his claims be correct.
A deed made without consideration, and with a fraudulent intention, is nevertheless, binding between the parties to it; and although it will be cancelled by a court of chancery at the instance of a creditor of the grantor, he must, if he be not a judgment creditor, show that he has a claim, which would be recognized, could process be served On his debtor; but, that by his removal from the state, that cannot be done; or that he has some equitable lien on the land. It is evident, that the appellee had no such lien. When the contract was first made, written articles of agreement were entered into between the parties, expressing the terms of it. What the date of that instrument was, cannot be ascertained from the record; but the deed of trust was executed as before stated, on the I9th of May, 1820, and the replevy bond was not assigned until the 6th of June, 1822, when the deed from Bradford to Anderson, bears date. Whether from the nature of the contract, as axpressed in the instrument of writing referred to the appellee waived or retained a lien on the land, for the purchase money, is entirely immaterial, in the de *77 cisión of this case. If he did, in the first instance retain such a lien, it ceased to exist, upon the alteration of the contract by the assignments.
Marshall, for appellants; Mills and Brown, for appellees.
The decree must be reversed, and the cause remanded to the circuit court, with directions to dismiss the bill.